IN THE SUPREME COURT OF THE STATE OF MONTANA

---

IN THE MATTER OF THE ADOPTION )

OF EMERGENCY INTERNAL OPERATING ) ORDER

PROCEDURES AND APPELLATE )

PRACTICE RULES )

---

After careful consideration we have determined to adopt the hereinafter described emergency internal operating procedures and modifications to the Montana Rules of Appellate Procedure (M.R.App.P.). These procedures and rule modifications are being adopted pending further study and order of this Court, but with a view toward amending this Court's Internal Operating Rules and the M.R.App.P. These procedures and rule modifications are being implemented on an emergency basis for the following reasons.

First, because of the steady increase in our workload, this Court is concerned that the constitutional right of meaningful access to the courts and to the administration of speedy and efficient justice guaranteed under Article II, Section 16, of Montana's Constitution is being and, increasingly, will continue to be jeopardized by delays in the appellate process both at the briefing stage and at the opinion-writing stage. Accordingly, it is necessary that we modify certain internal practice and appellate procedure rules to address these issues.

Second, while over the past several years we have implemented reforms in both procedures and rules to better manage our workload, these measures have neither significantly reduced this workload, relieved appellate delays, nor adequately addressed the mounting pressure to sacrifice quality for quantity--pressure which is inherent in any process where the workload threatens to overwhelm the persons and the resources of the institution responsible for its management.

Third, in recent years this Court has made a concerted effort to increase the number of cases orally argued. In so doing we have attempted to reverse the trend toward fewer oral arguments--a trend which greatly concerned the practicing Bar and which, concededly, did not well serve the administration of justice. Our increasing workload threatens this effort, and we believe that, unless we take steps to more effectively manage this workload, it is likely that fewer cases will be set for oral argument and oral arguments may, necessarily, be shortened.

Fourth, the above-described problems of increasing workload and delay will be significantly

exacerbated until well into the next biennium for two reasons.

1. On August 1, 2000, Chief Justice Jean A. Turnage and Justice William E. Hunt will no longer be assigned to case classification panels. This is necessary because the retiring justices need time to clear their own assignments of unwritten opinions prior to the end of the year and because, by that same date, the remaining justices will have to clear opinions in which the Chief Justice and Justice Hunt are panel members. To the extent that opinions are not written and signed by December 31, 2000, in cases in which the Chief Justice and Justice Hunt are panel members, many of those cases will have to be re-classified in 2001. Thus, not only will these retirements cause an increase on all justices in their work of opinion writing, but the remaining five members of the Court will be responsible for reading and attempting to decide all cases for classification sent to the Court from and after August 1, 2000.

2. While the person elected to fill Justice Hunt's seat will come into the panel rotation early in January 2001, it will likely be several months until the newly elected governor appoints a justice to fill the seat which will be vacated by one of the two sitting justices presently running for the office of Chief Justice. Accordingly, it is unlikely that the Court will be at full strength until the spring of 2001. During the period of August 1, 2000, to the spring of 2001, when the Court is not effectively or actually at full strength, the backlog of cases undecided and opinions unwritten will likely increase substantially. It will just as likely take many additional months to bring this backlog current.

Fifth, in its October 27, 1998 Final Recommendations, the Intermediate Appellate Court Study Committee, acknowledging that "the Supreme Court of Montana is approaching a maximum productivity level," recommended, among other things, that we

> study various procedural changes [we] could make to assist the Court in handling its workload. [And that we examine] . . . procedural changes [including] expedited calendars, staffing, and memoranda opinions.

Likewise, the September 15, 1998 report prepared for the Study Committee by Roger A. Hanson of the National Center for State Courts made, among others, similar recommendations. In response to these recommendations we have determined to implement the procedures and rule modifications set forth below, and may, in the event these reforms are not sufficiently effective, consider for implementation further suggestions outlined in the Committee and Hanson reports.

Accordingly, for the foregoing reasons, we have determined to and do hereby adopt and implement the following procedures and rule modifications, effective August 1, 2000, (unless a different effective date is specified), pending further order of this Court:

**1. Shortened Briefs and Petitions.** The word and page limitation for briefs specified in Rule 27(d)(i), M.R.App.P., is modified as follows: A principal brief must not exceed 10,000

words and a reply brief, amicus brief or petition for rehearing must not exceed 5,000 words. Rule 27(d)(ii), M.R.App.P., is modified as follows: a principal brief must not exceed 30 pages and a reply brief, amicus brief or petition for rehearing must not exceed 14 pages. Petitions filed under Rule 17(b), M.R.App.P., must not exceed 5000 words or 14 pages. These modifications apply to all briefs and petitions filed on or after August 1, 2000. Except as modified herein, all other provisions of the referenced Rules remain unchanged.

**2. Over Length and Supplemental Briefs.** From and after August 1, 2000, motions to file over length and supplemental briefs will no longer be routinely granted except in capital cases. Motions to file such briefs in other cases must be supported by an affidavit demonstrating extraordinary justification. To this extent, Rules 22 and 23(g), M.R.App.P., are modified accordingly.

**3. Regulating the Court's Weekly Reading Load.** From and after August 1, 2000, the Clerk of this Court will send up to this Court no more than seven (7) new cases for classification in each week (a week, for this purpose being Thursday through Wednesday). In a week following a week in which there was no classification conference, the Clerk will send up to this Court a number of new cases for classification which, when added to the number of cases sent up during the previous week, will not exceed ten (10). The Clerk will send new cases for classification to this Court on a first-in-first-out basis unless otherwise ordered by this Court. To this extent, Section I, Montana Supreme Court 1996 Internal Operating Rules, is modified accordingly.

**4. Motions for Extension of Time.** Recognizing that a significant part of the delay in the present appellate system is at the briefing stage and that it is necessary we eliminate this source of delay, commencing January 1, 2001, motions for extension of time to file briefs will no longer be routinely granted except in cases where the inability to timely file a brief is caused by the inability of the court reporter to timely transcribe the proceedings.

All motions for extension of time to file briefs must be supported by an affidavit demonstrating diligence and substantial need. All such motions must be filed at least seven (7) days before the expiration of the time prescribed for the filing of the brief. The affidavit in support must state: (1) when the brief is due; (2) when the brief was first due; (3) the length of the requested extension; (4) the reason the extension is necessary; (5) the movant's explanation establishing that the movant has exercised diligence and has substantial need for the extension and that the brief will be filed within the time requested; and (6) whether any other party separately represented objects to the request. A conclusory statement of justification being the "press of other business" will not constitute a showing of diligence and substantial need.

To this extent Rule 21(b), M.R.App.P., is modified accordingly.

**5. Non-cite and Memorandum Opinions.** We will attempt to dispose of more cases using non-cite and memorandum opinions. Furthermore, we will attempt to reduce the length of

these types of opinions.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk of this Court give notice of this Order by mail as follows:

1. To the District Judges and the Clerk of each District Court;

2. To Judith Meadows, State Law Librarian, with a request that she post this Order on the Montana Law Library website (www.lawlibrary.state.mt.us);

3. To Edward F. Bartlett, President of the State Bar of Montana, and George Bousliman, Executive Director of the State Bar of Montana, with a request that this Order be distributed to each member of the State Bar of Montana along with the 2000 Annual Meeting Notice and that this Order be posted on the State Bar of Montana website (www.montanabar.org);

4. To Charles Wood, Editor, *The Montana Lawyer*, with a request that this Order be published in the next available issue of that publication;

5. To James H. Goetz, Chairman, Advisory Commission on Rules of Civil and Appellate Procedure;

6. To Gregory J. Petesch, Code Commissioner and Director of Legal Services;

7. To State Reporter Publishing Company and West Group with a request that this Order be published in the publications of those respective companies; and

8. To Rick Day, Director, Montana Department of Corrections, with a request that this Order be made available to the men and women inmates of the Montana State Prison system.

DATED this 28th day of June, 2000.

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ KARLA M. GRAY